```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


LEVEL 10 PROMOTIONS, LLC                  CIVIL ACTION

VERSUS                                    NO: 07-6480

WILKES-BARRE MOTORS, INC.                 SECTION: "R"(5)
```

## ORDER AND REASONS

Before the Court is defendant Wilkes-Barre Motors, Inc.'s motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the Court GRANTS the motion.

## I.    BACKGROUND

Plaintiff Level 10 Promotions, LLC is Louisiana limited liability company that organizes and conducts promotional sales events for automobile dealerships. (Mendoza Aff., R. Doc. 9-2, ¶ 4.) Defendant Wilkes-Barre Motors, Inc. d/b/a Wilkes-Barre Dodge, Inc. is a Pennsylvania corporation with its principal place of business in Milford, Pennsylvania. (Compl., R. Doc. 1 ¶ 2; Knauss Aff., R. Doc. 7-3 ¶ 2.) Defendant is an automotive dealership located in Pennsylvania, and its advertising exclusively targets the Pennsylvania market. Wilkes-Barre does not have any offices in Louisiana, is not licensed to do business

in Louisiana, and does not supply goods or services to Louisiana. (Knauss Aff. ¶ 3.)

Wilkes-Barre asserts that it was contacted by Level 10 because Level 10 sought to provide defendant with its sales promotional services. (Knauss Aff. ¶ 5.)  The parties negotiated a contract over the phone and by e-mail.  On March 15, 2007 and April 3, 2007, representatives of Wilkes-Barr called Chris Mendoza, a sales representative for Level 10, requesting a sample of Level 10's mail advertisement for a sales event.  Mendoza sent the sample. (Mendoza Aff. ¶¶ 7-8.)  The parties then entered into a contract for plaintiff to conduct a sales event at defendant's dealership in Wilkes-Barre, Pennsylvania between April 17, 2007 and April 21, 2007. (*Id.* ¶ 6; Compl. ¶ 6; Mendoza Aff. ¶ 9.)  The contract was executed on April 3, 2007. (Mendoza Aff. ¶ 9.)  None of defendant's representatives traveled to Louisiana to negotiate the contract. (Knauss Aff. ¶ 6.)  Pursuant to the contract, defendant paid plaintiff an up front amount of $10,000 for advertising costs. (*Id.*; Mendoza Aff. ¶ 9.)

Level 10 worked in Louisiana to prepare for the April event, and on April 6, 2007 provided defendant with a direct-mail advertisement for the April event. (Mendoza Aff. ¶ 11.) Plaintiff alleges that defendant then called off the April event, allegedly because it could not obtain corporate approval for the April advertisement. (Mendoza Aff. ¶ 11.)  Plaintiff further

believes that defendant held an in-house sales event instead and used an almost identical direct-mail advertisement to promote the event. (Compl. ¶¶ 7-8; Smith Aff. ¶ 5.)

Rather than have plaintiff return the $10,000, the parties entered a new agreement in which plaintiff agreed to apply the money to a sales event to run from June 12, 2007 through June 16, 2007 (the "June event"). (*Id.* ¶ 9; Knauss Aff. ¶ 8; Mendoza Aff. ¶¶ 14-15.)  Plaintiff alleges that it incurred significant expenses preparing for the event, including $29,876.89 in direct-mail advertising expenses.  The advertisement was sent to 125,000 households to attract customers to the dealership. (Mendoza Aff. ¶ 16.)  Representatives from Level 10 traveled to Pennsylvania for the June event.  On Friday, June 15, 2007, defendant allegedly advised plaintiff that a member of its sales team had made an inappropriate remark to a dealership employee and asked plaintiff to leave before the sales event was over. (Compl. ¶¶ 10, 12; Smith Aff. ¶ 6.)  Plaintiff contends that the timing of the expulsion was particularly harmful, because most sales are completed on the Friday and Saturday of a sales event. (Mendoza Aff. ¶ 17.)  Plaintiff has not been compensated for the June event, nor for its costs in preparing for the event. (*Id.* ¶ 17; Smith Aff. ¶ 7.)  Finally, plaintiff claims that on June 15, 2007, Wilkes-Barre solicited two members of Level 10's sales team to remain at the dealership for the remainder of the weekend and

further offered them permanent employment. (Smith Aff. ¶ 8.)

In October of 2007 plaintiff sued defendant alleging bad faith breach of contract, conversion, copyright infringement, unfair trade practices and unfair competition, and unjust enrichment. (R. Doc. 1.)  Defendant now moves to dismiss for lack of personal jurisdiction. (R. Doc. 7.)

## II.   LEGAL STANDARD

When, as here, a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  When a court rules on this issue without a full evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  In determining whether plaintiffs have made a prima facie showing of jurisdiction, the Court accepts as true the allegations in the complaint, unless controverted by opposing affidavits, and resolves all factual conflicts in favor of the plaintiff. *Id.*  In making its determination, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of ... recognized [discovery] methods." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident

defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, *see* La. Rev. Stat. § 13:3201(B), the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *See id.* Specific jurisdiction exists when a plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Wilson*, 20 F.3d 644 at 647. General jurisdiction will attach, even if the act or transaction sued upon is

unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros*, 466 U.S. at 414 n.9; *Wilson*, 20 F.3d at 647.  This case presents only the question of specific jurisdiction.

To determine whether specific jurisdiction exists, courts examine whether the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and whether the cause of action arises out of or relates to those activities. *See Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547-48 (5th Cir. 1985).  The defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there. *Latshaw*, 167 F.3d at 211 (citing *World-Wide Volkswagen Corp. V. Woodson*, 444 U.S. 286, 297 (1980)).  In order to determine whether defendants have purposefully availed themselves of the privilege of conducting activities within this forum, the Court must consider factors such as the quality, nature and extent of defendants' activities in this forum, and the relationship between the cause of action and the contacts. *See D.J. Investments*, 754 F.2d at 545 n.1 (quoting *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981)).

**III. DISCUSSION**

    **A.   Breach of Contract**

The Court finds that plaintiff's breach of contract claim does not give rise to personal jurisdiction. That plaintiff entered into a contract with an out-of-state party cannot by itself establish personal jurisdiction. *Burger King Corp. v. Ruzeqics*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Moncrief Oil Int'l Inc. v. OAO GAZPROM*, 481 F.3d 309, 311 (5th Cir. 2007) ("merely contracting with a resident of the forum state does not establish minimum contacts").

Further, the performance of the contract did not create the minimum contacts necessary to establish jurisdiction. The bulk of the performance of the contract occurred in Pennsylvania. Although plaintiff had to work in Louisiana to prepare the advertising mailers and prepare for the sales event, no Wilkes-Barre representative ever traveled to Louisiana during the formation of the contract or in performance of the contract. The contract involved the plaintiff's going to Pennsylvania to put on sales events, and plaintiff's creating adds to send to Pennsylvania residents. In *D.J. Investments, Inc. v. Metzeler*

*Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542 (5th Cir. 1985), the Fifth Circuit found the place of the performance of the contract significant in finding sufficient minimum contacts to justify personal jurisdiction.  The nonresident defendants allegedly committed fraudulent misrepresentations during the course of several telephone calls and made further intentional misrepresentations to plaintiffs during a visit to the forum state. 754 F.2d at 547.  The court further emphasized that the "contract called for partial performance *by defendants* in the forum state." *Id.*  The subject matter of the contacts concerned selection of a successor to the defendants' existing distributorship in Texas, the forum state.

The Court finds that the facts in this case are more analogous to the facts in *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985).  In that case, plaintiffs, residents of Texas, brought a breach of contract action against Spademan, a nonresident.  Plaintiffs developed a modification for ski bindings manufactured and distributed by Spademan's corporation.  Plaintiffs contacted defendant to solicit interest in the modification. *See id.* at 1188.  Spademan shipped some bindings to Texas, where the plaintiffs modified them and mailed the modified bindings back to Spademan.  The parties then negotiated and entered into a contract under which plaintiffs assigned the patent on their invention to defendant, and defendant agreed to

8

make payments to the plaintiffs in Texas.  Defendant made eight payments.  When the Patent Office did not reissue the patent, defendant discontinued the payments, and plaintiffs sued defendant in federal district court in Texas.

The Fifth Circuit determined that the district court did not have jurisdiction over Spademan, even though he entered into a contract with a resident of the forum state, shipped goods into the forum state for modification, exchanged letters and telephone calls with the plaintiffs, agreed to a choice-of-law provision anticipating application of the law of the forum state, and mailed payments to the forum state. *Stuart*, 772 F.2d at 1192-1194.  The Court noted that the quality of the contacts predominates over the number of the contacts for purposes of finding minimum contacts in a jurisdictional analysis and found that the agreement entered into by Spademan and the plaintiffs did not contemplate a long-term relationship with continuing obligations. *Id*. at 1194 (comparing contract to franchise agreements in *Burger King Corp., supra*).

Similarly, here, the contract was for less than one year, anticipated one to two sales events to take place in Pennsylvania, involved no performance by the defendant in Louisiana, and contained no choice of law provision.  Under *Stuart*, these facts fall short of establishing the type of contract that might give rise to a reasonable anticipation on the

part of defendant of being haled into court in Louisiana.

### B. Tortious Conduct

Plaintiff contends that the Court has personal jurisdiction because defendant engaged in "intentional conduct that caused the tortious injury in Louisiana." Level 10 relies on *Calder v. Jones*, 465 U.S. 783 (1984), and *Guidry*, *supra*, in support of its argument. The Court finds that unlike those two cases, there is no evidence here that Wilkes Barre's actions were specifically targeted *at Louisiana* or that the harm plaintiff has suffered in Louisiana rises to the level of harm the courts in *Calder* and *Guidry* found to support specific jurisdiction.

In *Calder*, a reporter living in Florida published an allegedly defamatory article in the *National Enquirer*, a publication based in Florida but with national distribution, about a popular entertainer living in California. The allegedly libelous story concerned the California activities of a California resident, entertainer Shirley Jones. Importantly, the Supreme Court noted that the article drew from California sources and that the reporter and publishers of the article knew that "the brunt of th[e] injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Id.* at 789-90. The Supreme Court found that under those circumstances the petitioners could "reasonably anticipate being haled into court"

in California. *Id*. at 790 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

The Fifth Circuit embraced the Calder "effects" test in *Guidry*, finding that "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences *if the effects are seriously harmful* and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry*, 188 F.3d at 628 (emphasis added). The Fifth Circuit therefore extended the doctrine's applicability beyond jurisdiction for libelous actions alone. *Guidry*, 188 F.3d at 629 (extending the *Calder* analysis to intentional and unintentional torts causing death or serious physical harm).

The parties in *Calder* had no relationship, contractual or otherwise, which provided for the plaintiff, Shirley Jones, to perform services in Florida. Rather, a writer and editor for the *National Enquirer* published an article targeting her in her home state, where her reputation would be most adversely affected, allegedly causing her emotional distress and damages. Further, the focal point of the article was Jones, a California resident. Here, on the other hand, the focal point of the relationship between Level 10 and Wilkes-Barre was for Level 10 to assist defendant with promotional sales events in Pennsylvania.

The facts in *Guidry* are also inapposite. In that case, the

11

plaintiff alleged that as a result of defendants' false representations as to the addictive and cancer-causing effects of tobacco products sold in Louisiana, he became addicted and contracted cancer from his repeated purchase and use of the products.  In finding that the district court had sufficient minimum contacts, the Fifth Circuit noted that defendants' alleged intentional and negligent actions were knowingly initiated and aimed at tobacco users in Louisiana; each defendant made false misrepresentations of facts that it knew would have a "potentially devastating physically harmful impact" on Louisiana residents, including the plaintiff, and each defendant knew that the brunt of that injury would be felt by the plaintiffs and other citizens in the state in which they lived. *Id*. at 630.

    The Court finds that the injury alleged here, which is purely financial, does not rise to the level of tortious conduct the Fifth Circuit intended to embrace with the effects test. *Guidry* is distinguishable from this case in that the harm caused in that case was physical, rather than solely monetary.  In fact, the Fifth Circuit specifically observed that the tobacco trade association defendants were not charged "with mere untargeted negligence endangering only economic or reputational interests," but rather with actions that would potentially have a "devastating physically harmful impact" on the plaintiffs. *Id*. at 630.

12

Here, plaintiff contends that because it is located in Louisiana, it has suffered harm in Louisiana.  The harm is purely financial, and plaintiff has not alleged that the harm will be continuous, or affect plaintiff's future business opportunities, as was the case in *Calder*.[1] *Compare also D.J. Investments*, 754 F.2d at 548 (finding that injurious effect of alleged tort of misrepresentation occurred in Texas when appellant did not receive the promised right to take over an existing Texas distributorship, and appellant purchased a Texas business that it would not have otherwise acquired).

Although defendant was aware that breaching the contract or making misrepresentations to the plaintiff would cause plaintiff harm, and that harm would be felt in plaintiff's home state, the parties were not in the same positions and the type of harm suffered by the plaintiffs was different from that suffered by the plaintiffs in *Calder* and *Guidry*. *See also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001) ("We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court ... when the 'potential' injury claimed by Appellants resulted from

---

[1] Although plaintiff alleges that defendant solicited two members of the plaintiff's sales team to remain at the dealership for the remainder of the June event and offered them permanent employment, this is alleged as a breach of contract.  Further, there are no allegations that any of plaintiff's employees actually accepted the defendant's offer.

13

interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there."). The Fifth Circuit has scaled back the effects test in recent years, noting that effects jurisdiction "is rare." *Moncrief*, 481 F.3d at 314. The court has further noted that injury felt by the plaintiff in the forum state is not sufficient, by itself, to establish jurisdiction; "the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)). Accordingly in *Moncrief* the Fifth Circuit "declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident." *Id.* at 314.

Defendant entered into a sales promotion agreement with a Louisiana company that provided that Level 10 would develop advertising to be distributed in Pennsylvania, aimed at customers in Pennsylvania, to sell automobiles in Pennsylvania, and that provided for substantial performance of the contract in Pennsylvania. Defendant allegedly breached the contract, used plaintiff's materials without authorization, and misrepresented its reasons for cancelling one sales event and for forcing plaintiff to leave the second sales event early. Upon review of

these contacts and plaintiff's causes of action arising from defendant's alleged conduct, the Court finds that defendant should not have reasonably anticipated being haled into court in Louisiana.  Accordingly, the Court finds that it does not have personal jurisdiction over Wilkes-Barre.[2]

**IV. CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is GRANTED.

New Orleans, Louisiana, this **14th** day of July, 2008

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[2] Because no minimum contacts exist to exercise jurisdiction over defendant, the Court need not consider whether such jurisdiction would violate traditional notions of fair play and substantial justice. See *Moncrief*, 481 F.3d at 314-15.